**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

WAI KUEN CHU, KUN SOO KIM, DONNY
VALLEJO, MANUEL TRINIDAD, *and*
RICHARD LEE, *on behalf of themselves and all*
*others similarly situated*,

        Plaintiffs,

           v.

SAMSUNG ELECTRONICS AMERICA, INC, and
SAMSUNG ELECTRONICS CO., LTD

        Defendants.

———————————————————————

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiffs WAI KUEN CHU, KUN SOO KIM, DONNY VALLEJO, MANUEL TRINIDAD, and RICHARD LEE, (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class Action Complaint against Defendants, SAMSUNG ELECTRONICS AMERICA, INC, and SAMSUNG ELECTRONICS CO., (collectively, "Samsung" or "Defendants") and state as follows based upon their own personal knowledge and the investigation of their counsel:

## <u>NATURE OF THE ACTION</u>

    1.    Samsung advertises its phones and tablets by claiming that their screens have various high resolutions, i.e. that they have a high pixel count as tallied by multiplying the screen height

1

in pixels by the screen width in pixels. However, Samsung's "Pentile" phones and tablets (the "Products", as set forth below) do not have the represented number of pixels, and therefore do not have the advertised high resolutions:

| PRODUCTS | | | | | | |
|---|---|---|---|---|---|---|
| Year | Model | Screen Size in Inches | Nominal Pixel Resolution | Resolution Description | Layout | Type |
| 2010 | Nexus S | 4 | 480 x 800 | | Rectangular Pentile | Phone |
| 2010 | Wave | 3.3 | 480 x 800 | | Rectangular Pentile | Phone |
| 2010 | Galaxy S | 4 | 480 x 800 | | Rectangular Pentile | Phone |
| 2011 | Galaxy S Plus | 4 | 480 x 800 | | Rectangular Pentile | Phone |
| 2011 | Galaxy Note | 5.3 | 800 x 1280 | | Rectangular Pentile | Phone |
| 2011 | Galaxy Nexus | 4.65 | 720 x 1280 | HD | Rectangular Pentile | Phone |
| 2012 | Ativ S | 4.8 | 720 x 1280 | HD | Rectangular Pentile | Phone |
| 2012 | Galaxy S III | 4.8 | 720 x 1280 | HD | Rectangular Pentile | Phone |
| 2012 | Galaxy S III Mini | 4 | 480 x 800 | | Rectangular Pentile | Phone |
| 2013 | Galaxy Note 3 | 5.7 | 1080 x 1920 | FHD/1080p | Diamond Pentile | Phone |
| 2013 | Galaxy S4 | 5 | 1080 x 1920 | FHD/1080p | Diamond Pentile | Phone |
| 2014 | Galaxy S5 | 5.1 | 1080 x 1920 | FHD/1080p | Diamond Pentile | Phone |
| 2014 | Galaxy Note 4 | 5.7 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2014 | Galaxy Tab S 8.4 | 8.4 | 2560 x 1600 | WQXGA | Diamond Pentile | Tablet |
| 2015 | Galaxy Note 5 | 5.7 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2015 | Galaxy S6 | 5.1 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2015 | Galaxy S6 Active | 5.1 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2015 | Galaxy S6 Edge | 5.1 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2015 | Galaxy S6 Edge+ | 5.7 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2015 | Galaxy Tab S2 8.0 | 8.4 | 2048 x 1536 | QXGA | Diamond Pentile | Tablet |
| 2016 | Galaxy S7 | 5.1 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2016 | Galaxy S7 Edge | 5.5 | 1440 x 2560 | QHD | Diamond Pentile | Phone |
| 2017 | Galaxy S8 | 5.8 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2017 | Galaxy S8 Active | 5.8 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2017 | Galaxy S8+ | 5.8 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2017 | Galaxy Note 8 | 6.3 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2018 | Galaxy S9 | 5.8 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2018 | Galaxy S9+ | 6.2 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2018 | Note 9 | 6.4 | 1440 x 2960 | QHD+ | Diamond Pentile | Phone |
| 2018 | Galaxy A8 | 5.6 | 1080 x 2220 | FHD+ | Diamond Pentile | Phone |
| 2018 | Galaxy A8+ | 6.0 | 1080 x 2220 | FHD+ | Diamond Pentile | Phone |
| 2018 | Galaxy A9 | 6.3 | 1080 x 2220 | FHD+ | Diamond Pentile | Phone |

2.      All of Defendants' nominal pixel resolution counts misleadingly count false pixels as if they were true pixels. The Products' screens do not use true pixels at all.

**Defendants' False Marketing**

3.      One of the most important factors in the value and price of a phone or tablet is its screen quality, the most important factor of which is screen resolution. For this reason, Defendants' Products are advertised and marketed based on their screen resolution. On Defendant's own website, as well as in the stores where the majority of the Products are sold, the Products are represented and advertised as having high-resolution screens. Plaintiffs and Class Members relied on these direct representations from Defendants. For example, below are the specifications of the Galaxy S8 and Galaxy S8+ Products:



4.    Defendants also publish informational articles on their website that uniformly repeat their false representations[1]:



---

[1] https://www.samsung.com/us/mobile/phones/galaxy-s/samsung-galaxy-s7--32gb---unlocked---black-onyx-sm-g930uzkaxaa/ (last accessed Dec. 14, 2018).

5.    The Galaxy A9 Product is advertised as having 1080×2220 pixels, but in fact does not use true pixels with red, green, and blue subpixels in each pixel. Instead, the Product has only false screen pixels, with just two subpixels per false pixel (1080×2220×2 = 4,795,200 subpixels), and it does not actually have any subpixels at all in the display-area corners. In contrast, most competitors' phones are truthfully advertised as having a given number of pixels because they have the full three subpixels per pixel. For example, the iPhone 8 Plus is truthfully advertised as having a resolution of 1920×1080 pixels, but it has a higher quality screen than the Galaxy A9 Product in that it has more subpixels on its screen (1920×1080 pixels×3 subpixels per pixel = 6,220,800 subpixels). In contrast to the Product, the iPhone 8 Plus also does not have rounded corners of its display area. Defendant's pixel representations mislead consumers into believing that the Products have better screen than they really do. Consumers, including Plaintiffs and members of the Class, relied on Defendant's marketing campaign depicting the Products as having superior screens than other phones, including the iPhone 8 Plus, which has genuine pixels on its screen, a larger rectangular surface area than the Products, and is sold for less than the price of the Products.

6.    Similar representations appear on Defendant's Products as they are sold in third party stores. Plaintiffs and Class Members relied on these in-store representations. For example, below is the specifications screen for the Galaxy S8+ at Verizon stores:



7.     Sprint stores explicitly compare Defendants' Products to each other substantially based on their resolution as measured in pixels. For example, see the below comparison of the Samsung Galaxy J3 with the Samsung Galaxy S7 Edge:



8.      Likewise, major electronics retailers falsely report the pixel count and resolution of the Products, as instigated by Defendants. For example, on the Product page on www.bestbuy.com where the Product can be ordered,[2] Defendants' retailers reiterate the misrepresentation while trying to lure consumers into purchasing the Product (see partial screenshot below) (highlighting added):

| Display | | |
|---|---|---|
| Display Type | | Super AMOLED HD |
| Screen Resolution ⓘ | | 2560 x 1440 |
| Touch Screen ⓘ | | Yes |

9.      Defendants' marketing of its Products falsely inflates the screens' pixel count and resolution to seem more appealing to consumers. Defendants do so because screen resolution is such an important factor to consumers when evaluating smartphones and tablets.

10.     Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale in the United States, including all 50 states and the District of Columbia.

11.     During the Class Period, Defendant manufactured, marketed and sold the Products throughout the United States, including New York. Defendants purposefully misrepresented, and continue to misrepresent, the screens of the Products.

12.     Defendants violate statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against false advertising and against unfair, deceptive, fraudulent, and unconscionable trade and business practices. These statutes include:

---

[2] https://www.bestbuy.com/site/samsung-certified-pre-owned-galaxy-s6-4g-lte-with-32gb-memory-cell-phone-white-pearl-at-t/5657896.p?skuId=5657896 (last accessed Mar. 2, 2018).

a.  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;

b.  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

c.  Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

d.  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

e.  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

f.  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

g.  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

h.  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

i.  District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

j.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

k.  Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

l.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

m.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

n.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

o.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

p.  Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

q.  Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;

r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

u.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w.  Michigan Consumer Protection Act, § 445.901, *et seq.*;

x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

y.  Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

*aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;

*bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

*ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*;

*ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*;

*gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.,* and New York False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.*;

*hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-01, *et seq.*;

*ii.* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*jj.* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01, *et seq.*;

*kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*nn.* Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24-1, *et seq.*;

*qq.* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*rr.* Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.*;

*ss.* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

*uu.* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

*vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*;

*yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

13.     Defendants' marketing of their Products falsely inflates their screens' supposed pixel counts, resolutions, and sizes to make the Products seem more appealing to consumers.

Defendant does so because screen resolution is an important factor to consumers when

evaluating smartphones. Plaintiffs and Class Members in all 50 states and the District of

Columbia reasonably relied on Defendant's deceptive marketing campaign to purchase the

Products when they would not have purchased them otherwise or would not have purchased

them at their inflated purchase prices. Defendants have been unjustly enriched as a result of their

unlawful conduct. Through these unfair and deceptive practices, Defendants have collected

millions of dollars from the sale of their Products. Plaintiffs bring this action to stop Defendants'

deceptive practices.

## <u>JURISDICTION AND VENUE</u>

14.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d).

This is a putative class action whereby: (i) the proposed class consists of over 100 class

members; (ii) at least some of the proposed class members have a different citizenship from

Defendants; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00,

excluding interest and costs.

15.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28

U.S.C. § 1331 because it arises under the laws of the United States.

16.     The Court has jurisdiction over the state law claims because they form part of the

same case or controversy under Article III of the United States Constitution.

17.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28

U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is

between citizens of different states.

18.     This Court has personal jurisdiction over Defendants because their Product is

advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in

the wrongdoing alleged in this Complaint throughout the United States, including in New York

State; Defendants are incorporated in and are authorized to do business in New York; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State, and Defendant SAMSUNG ELECTRONICS AMERICA, INC. is incorporated in New York State.

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to Class members residing in this District, and the Plaintiff is a resident of this District under 28 U.S.C. 1391(c)(2) because he is subject to personal jurisdiction in this district.

## <u>PARTIES</u>

*Plaintiffs*

20.    Plaintiff WAI KUEN CHU is a citizen of the State of New York and resides in New York County, New York. In the spring of 2015, Plaintiff WAI KUEN CHU was exposed to and saw Defendants' screen claims regarding the Galaxy Note 5 in advertisements and online as part of Defendant's continuous marketing program. In reliance on the Product specifications as conveyed in Defendants' representations and in the product specifications sheet, Plaintiff WAI KUEN CHU purchased the Product for personal consumption at a Verizon store located at 873 8th Ave, New York, NY 10019, NY 10010. The retail purchase price was approximately $600 for his Product. Plaintiff WAI KUEN CHU purchased the Product believing it would provide the advertised screen quality, i.e. that it would have the advertised resolution as measured in pixels.

Plaintiff WAI KUEN CHU used the Product as directed. The Product did not provide the advertised screen quality or resolution, however. As a result of his purchase, Plaintiff WAI KUEN CHU suffered injury in fact and lost money because the Product did not provide the advertised screen quality or resolution and was worth less than the phone he had bargained for. Plaintiff WAI KUEN CHU intends to purchase phone products from Defendant in the future. Due to the multiplicity of Defendant's phones and tablets—and the fact that only some are defective—Plaintiff WAI KUEN CHU is concerned that he will be misled into purchasing a defective Product in the future.

21.    Plaintiff KUN SOO KIM is a citizen of the State of California and resides in Alameda County, California. In the spring of 2015, Plaintiff KUN SOO KIM was exposed to and saw Defendants' screen claims regarding the Galaxy Note 4 in advertisements and online as part of Defendant's continuous marketing program. In reliance on the Product specifications as conveyed in Defendants' representations and in the product specifications sheet, Plaintiff KUN SOO KIM purchased the Product for personal consumption at a Verizon store located at 139 5th Ave, New York, NY 10010. The retail purchase price was approximately $500 for his Product. Plaintiff KUN SOO KIM purchased the Product believing it would provide the advertised screen quality, i.e. that it would have the advertised resolution as measured in pixels. Plaintiff KUN SOO KIM used the Product as directed. The Product did not provide the advertised screen quality or resolution, however. As a result of his purchase, Plaintiff KUN SOO KIM suffered injury in fact and lost money because the Product did not provide the advertised screen quality or resolution and was worth less than the phone he had bargained for. Plaintiff KUN SOO KIM intends to purchase phone products from Defendant in the future. Due to the multiplicity of

Defendant's phones and tablets—and the fact that only some are defective—Plaintiff KUN SOO KIM is concerned that he will be misled into purchasing a defective Product in the future.

22.     Plaintiff DONNY VALLEJO is a citizen of the State of California and resides in San Mateo County, California. In late 2015, Plaintiff DONNY VALLEJO was exposed to and saw Defendants' screen claims regarding the Galaxy S6 in advertisements and online as part of Defendant's continuous marketing program. In reliance on the Product specifications as conveyed in Defendants' representations and in the product specifications sheet, Plaintiff DONNY VALLEJO leased the Product for personal consumption in a Sprint store in the San Francisco area. The retail purchase price was approximately $600 for his Product, paid over the course of the lease. Plaintiff DONNY VALLEJO leased the Product believing it would provide the advertised screen quality, i.e. that it would have the advertised resolution as measured in pixels. Plaintiff DONNY VALLEJO used the Product as directed. The Product did not provide the advertised screen quality or resolution, however. As a result of his purchase, Plaintiff DONNY VALLEJO suffered injury in fact and lost money because the Product did not provide the advertised screen quality or resolution and was worth less than the phone he had bargained for. Plaintiff DONNY VALLEJO intends to purchase phone products from Defendant in the future. Due to the multiplicity of Defendant's phones and tablets—and the fact that only some are defective—Plaintiff DONNY VALLEJO is concerned that he will be misled into purchasing a defective Product in the future.

23.     Plaintiff MANUEL TRINIDAD is a citizen of the State of New Jersey and resides in Mercer County, New Jersey. In January 2018, Plaintiff MANUEL TRINIDAD was exposed to and saw Defendants' screen claims regarding the Galaxy Note 4 phone and Galaxy Tab S2 8.0 tablet in advertisements and online as part of Defendant's continuous marketing program. In

14

reliance on the Product specifications as conveyed in Defendants' representations and in the product specifications sheets, Plaintiff MANUEL TRINIDAD purchased the Products for personal consumption online. The retail purchase prices were approximately $450 for his Samsung Galaxy S8 phone and $110 for his Note 2 tablet. Plaintiff MANUEL TRINIDAD purchased the Products believing they would provide the advertised screen quality, i.e. that they would have the advertised resolution as measured in pixels. Plaintiff MANUEL TRINIDAD used the Products as directed. The Products did not provide the advertised screen quality or resolution, however. As a result of his purchases, Plaintiff MANUEL TRINIDAD suffered injury in fact and lost money because the Products did not provide the advertised screen quality or resolution and were worth less than the phone and tablet he had bargained for. Plaintiff MANUEL TRINIDAD intends to purchase phone products from Defendant in the future. Due to the multiplicity of Defendant's phones and tablets—and the fact that only some are defective—Plaintiff MANUEL TRINIDAD is concerned that he will be misled into purchasing a defective Product in the future.

24.    Plaintiff RICHARD LEE is a citizen of the State of Pennsylvania and resides in Bucks County, Pennsylvania. In the spring of 2014, Plaintiff RICHARD LEE was exposed to and saw Defendants' screen claims regarding the Galaxy Note 4 in advertisements and online as part of Defendant's continuous marketing program. In reliance on the Product specifications as conveyed in Defendants' representations and in the product specifications sheet, Plaintiff RICHARD LEE purchased the Product for personal consumption from a Best Buy located in Pennsylvania. The retail purchase price was approximately $600 for his Product. Plaintiff RICHARD LEE purchased the Product believing it would provide the advertised screen quality, i.e. that it would have the advertised resolution as measured in pixels. Plaintiff RICHARD LEE used the Product as directed. The Product did not provide the advertised screen quality or

15

resolution, however. As a result of his purchase, Plaintiff RICHARD LEE suffered injury in fact and lost money because the Product did not provide the advertised screen quality or resolution and was worth less than the phone he had bargained for. Plaintiff RICHARD LEE intends to purchase phone products from Defendant in the future. Due to the multiplicity of Defendant's phones and tablets—and the fact that only some are defective—Plaintiff RICHARD LEE is concerned that he will be misled into purchasing a defective Product in the future.

***Defendants***

25.    Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business located at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

26.    Defendant Samsung Electronics Co., Ltd. ("SEC") is a foreign corporation organized and existing under the laws of the Republic of Korea, with its principal place of business located at 129 Samsung-Ro, Yeongtong-Gu, Suwon-si, Gyeonggi-do, Korea. SEC is the parent corporation of SEA and owns 100% of SEA's stock.

## FACTUAL ALLEGATIONS

### Pixel Structure

27.    Smartphones and tablets are devices that rely on their digital display to communicate information to the user. Tiny units on the display screen (pixels) individually display a full range of colors, brightness, and shades, and these pixels combine to make up an image. Screen display size and image quality are determined by the number of pixels available in the display. For any screen size, an increased density of pixels, with more pixels in the same amount of space, results in a higher quality image.

16

28.    Every pixel on a screen is made of several smaller subpixels. Each subpixel can output exactly one color. When combined, subpixels form a "pixel" that can take on a wide range of colors and brightness. A pixel does this by lighting up different combinations of its sub pixels in different intensities. Traditionally, a pixel is made up of three subpixels: Red (R), Green (G), & Blue (B). Because these three colors are the primary colors, they can be combined make other colors. For example: Red and Green light combine to make Yellow light; Green and Blue light combine to make Cyan light; and Red and Blue light combine to make Magenta light. Red, Green, and Blue light can combine to make White light. See the images below for reference:





29.    By changing the brightness of each subpixel, the overall pixel is able to display the full range of color with varying brightness and shades. See the color wheel below, illustrating the spectrum of color possible using different intensities of different combinations of Red, Blue, and Green light:



30.    This occurs because the three subpixels' color combines into a single color for the pixel. These subpixels are typically lined up on the screen in the following order: RGB_RGB_RGB_RGB-…, etc., with each RGB combination representing one pixel.[3]

31.    Each pixel is only lit up by its subpixels. If all of a pixel's subpixels are off, the pixel remains black because no subpixel (or combination of subpixels) is on.

32.    True screen pixels have at least one red subpixel, one blue subpixel, and one green subpixel, grouped together.

**Defendant's Screens Are Deceptively Advertised as Having More Pixels Than They Really Have**

33.    Defendants manufacture, distribute, market, and sell phones nationwide, including the Product phones and tablets that have "Pentile" screens. Phones with Pentile screens are marketed as possessing higher pixel resolution screens than they really have.

34.    "Pentile" screens are screens omit half of the red and half of the blue subpixels in a display. Therefore, they have half of the advertised number of pixels and two thirds of the advertised number of subpixels. For example, where a traditional screen would have four pixels (and 12 subpixels, 4 of each primary color), Defendants remove every other red subpixel and every other blue subpixel, resulting in hardware with 8 subpixels (4 green, 2 red, and 2 blue) that is only capable of forming two true pixels (because there are only two red and two blue subpixels, and a true pixel needs at least one red, blue, and green subpixel). Instead of using true

---

[3] It is also possible to align the red, blue, and green subpixels in a different order within a pixel. So long as each pixel contains at least one of each subpixel color—red, green, and blue—it will be fully capable of making every color. For example, in the Google Nexus 4, the blue subpixel is first, such that the layout is "BGR".

pixels comprised of three sub-pixels, Pentile screens use false pixels comprised of fractions of pixels.

35.    Since launching the Pentile Products, Defendants have consistently conveyed their uniform deceptive message to consumers throughout the United States, including New York. False statements about Plaintiffs' Products were directly released by Defendants online and repeated on the Product packaging. See images below, showing some of Defendants' false online resolution statements regarding Plaintiffs' Products:

**Galaxy S6:**[4]

**Display**
Main Display Resolution
2560 x 1440 (Quad HD)

**Note 4:**[5]

**Display**
Main Display Resolution
2560 x 1440 (Quad HD)

36.    There are two basic types of Pentile Matrix screen, the original "Rectangular" pattern and the newer "diagonal" (or "Diamond") pattern, both of which are deceptive in substantially

---

[4] https://www.samsung.com/us/mobile/phones/galaxy-s/samsung-galaxy-s6-32gb-at-t-black-sapphire-sm-g920azkaatt/#specs (last accessed Mar. 2, 2018).
[5] https://www.samsung.com/us/mobile/phones/galaxy-note/samsung-galaxy-note-4-verizon-charcoal-black-sm-n910vzkevzw/#specs (last accessed Mar. 2, 2018).

the same manner and are missing approximately the same number of pixels (50%) and subpixels (33%).

37.    On a Rectangular Pentile screen, false pixels share adjacent red and blue subpixels as shown below, with each red and blue subpixel divided in two:



38.    On a Diamond Pentile screen, false pixels share fractions of neighboring red and blue subpixels as shown below, with each red and blue subpixel divided into quarters, and each false pixel containing two quarters of blue subpixels and two quarters of red subpixels:



39.    Just as in the Rectangular Pentile screen, in the Diamond Pentile screen each false pixel contains one green subpixel and portions of other subpixels. Just as in the Rectangular Pentile screen, there are only half of the necessary number of red and blue subpixels.

40.    This means that the false (Pentile) pixels in the Products cannot all freely make any color because each false pixel is unable to freely use the red and blue subpixels it shares with the adjacent false pixel. For example, if an image requires a blue pixel next to a red pixel, the image

will be blurry because those two false (Pentile) pixels share either a red subpixel or a blue subpixel. To make a blue pixel, red subpixels must be off and the blue subpixels must be on, whereas to make a red pixel, the red subpixels must be on and the blue subpixels must be off. It is impossible for the two adjacent false pixels to make a display of one red pixel and one blue pixel because they share subpixels, as shown above.

41.    Due to being based on fake pixels, the Products' screens omit half of the red and half of the blue subpixels in a display. Therefore, they have half of the advertised number of pixels and two thirds of the advertised number of subpixels. For example, where a traditional screen would have 16 pixels (and 48 subpixels), Defendants remove every other red subpixel and every other blue subpixel, resulting in only two real pixels (and 8 subpixels).

42.    The below diagrams show how Defendants abuse the concept of a pixel. The first grid consists of 36 subpixels, which comprise 12 true pixels, with each pixel possessing a red subpixel, a green subpixel, and a blue subpixel. The second grid shows how these are grouped into 12 true pixels:



Figure 1                                Figure 2

43.     The third grid shows the 24 subpixels Defendants include in their 12 false pixels.[6] The fourth grid shows that the hardware can only physically comprise six true pixels (containing at least one red, one blue, and one green subpixel) at most:

Figure 3

Figure 4

44.     So, for every 12 red subpixels in a traditional screen, Defendants provide only 6 red subpixels. For every 12 blue subpixels in a traditional screen, Defendants provide only 6 blue subpixels. For every 12 green subpixels in a traditional screen, Defendants provide the appropriate 12 subpixels. So, in total, for every 36 subpixels in a traditional screen, Defendants provide only 24 subpixels. The result of omitting the red subpixels and blue subpixels from the screen that only six true pixels' worth of subpixels remain. Where a Product has six true pixels' worth of subpixels, Defendants misrepresent that the Product has twelve pixels. Defendants

[6] The display layout tilts the square grid 45 degrees into a diamond grid.

make this same misrepresentation for the Products—regardless of their true pixel counts, they are misrepresented as having more pixels than they really do.

45.     Correspondingly, Samsung's 1440 x 2560 Quad High Definition ("QHD") screens should have 3,686,400 pixels (1440 x 2560 = 3,686,400) and at least three subpixels in each pixel, i.e. 11,059,200 subpixels (3,686,400 red subpixels + 3,686,400 green subpixels + 3,686,400 blue subpixels = 11,059,200 total subpixels). However, the screens actually have about half the appropriate number of red and blue subpixels (only 1,843,200) and therefore about half the number of true pixels.

46.     Samsung does not provide extra green subpixels to consumers – it merely provides the correct number of green subpixels, but no more, and it only includes half of the promised number of red and blue subpixels. Samsung reduces its production costs by leaving out half of the blue and half of the red subpixels.

47.     Even though Samsung's screens have only real one pixel for every four subpixels, Samsung advertises them as having one pixel for every two subpixels. It justifies this by counting red and blue subpixels as "shared" by pixels, splitting the subpixels in half between pixels. The shared subpixels are generally not able to simultaneously be the appropriate brightness for both of the false pixels they are shared between.

48.     In other words, Samsung is misleading reasonable consumers to believe that its Pentile matrix technology provides the same clarity as RGB screens. A traditional pixel has three subpixels—red, blue and green—and can therefore make any color, with every adjacent pixel also able to simultaneously make any color. The Pentile screens possess about 50% fewer red subpixels and about 50% fewer blue subpixels than advertised. The Pentile screens only have enough red subpixels and blue subpixels to comprise half of the advertised number of pixels.

**Defendants' Method of Counting Pixels is Unjustified and Not Anticipatable by a**
**Reasonable Consumer**

49.     A real pixel consists of a red subpixel, a green subpixel, and a blue subpixel.

Defendant counts as a "pixel" each unit of two quarters of a red subpixel, one green subpixel,

and two quarters of a blue subpixel. The absurdity of Defendant's method of counting fractions

of subpixels as pixels is made apparent by applying an analogous method to a standard RGB

pixelated screen. It is trivially easy to draw imaginary boxes around portions of subpixels to

arrive at a higher pixel count. Below is a diagram of nine subpixels combined to form three

pixels:



50.     Below, those same subpixels are arbitrarily subdivided to form seven false pixels.

Each false pixel is uniquely comprised of portions of red, green, and blue subpixels:



51.     Such a subdivision would be wholly misleading, and that is precisely the type of

deception practiced by Defendant. What consumers reasonably expect when they see an

advertised screen resolution denoted in pixels is that the screens in question have that many

**actual** pixels, with each pixel able to create the full range of colors, not that some fanciful drawing of boxes could enclose fractions of each type of subpixel.

52.      Defendant advertises a screen resolution that is higher in quality then what is actually delivered. This misleads consumers into overpaying for phones that offer worse quality than what those consumers reasonably expect to receive.

53.      Samsung advertises a screen resolution that is higher in quality then what is actually delivered. This misleads consumers into overpaying for phones that offer worse quality than what those consumers reasonably expect to receive.

**The Products Are Missing Additional Pixels and Subpixels Because the Product Screens Have Rounded Corners**

54.      The Products are advertised as possessing a full grid of pixels, with a certain number of pixels width and a certain number of pixels in height. For example, Plaintiff TRINIDAD's Note 8 is advertised as having a 1440 x 2560 screen, which should be 1,440 pixels wide and 2,560 pixels tall, with 3,686,400 total pixels and 11,059,200 total subpixels (3,686,400 red subpixels, 3,686,400 green subpixels, and 3,686,400 blue subpixels). In reality, the Pentile screen has fewer because it is 1440 pixels wide only at its widest point and 2560 pixels tall only at its highest point. See below:



**Defendants' Advertising and Production Practices Acknowledge that Pentile Screens are Inferior**

55.    In its promotions for non-Pentile products, Samsung acknowledges that the Pentile matrix offers a lower image quality than a regular phone screen utilizing an RGB display. Defendants use this fact as a selling point in favor of their non-Pentile products. For example, in an advertisement for products with its Super AMOLED Plus[7] display, Samsung compared an "Ordinary AMOLED Display" (which utilizes a Rectangular Pentile subpixel layout) to

---

[7] Defendants use similar marketing terms for Pentile products (which do not have the represented screen quality) and non-Pentile products (which have a sufficient number of subpixels). For example, "Super AMOLED Plus" refers only to non-Pentile products, whereas "Quad HD+ Super AMOLED" and ordinary "AMOLED" refer only to Pentile products.

Samsung's own "Super AMOLED Plus" display (which utilizes a regular RGB subpixel arrangement containing only true pixels) to show that the Super AMOLED Plus display possesses superior image quality <u>because it has more subpixels</u>. See Defendants' advertisement below:



56.     It is for this reason that Defendants' larger tablets do not use Pentile layout—the pixel shortfall in Pentile screens is more apparent on larger screens that have less pixel density. For example, the 8.4-inch version of the Galaxy Tab S has a Pentile screen, whereas the 10.5-inch version of the Galaxy Tab S has a true-pixel screen instead, and the 8.0-inch version of the

Galaxy Tab S2 has a Pentile screen, whereas the 9.7-inch version of the Galaxy Tab S2 has a true-pixel screen instead.

57.     Samsung's higher ratio of green subpixels to other subpixels **might** have merit as a way to design screens for human perception. Many high-end screens add subpixels to each pixel, using RGBW or RGBY pixels on their screens, with an extra, fourth subpixel per pixel in addition to the base RGB subpixels. Such screens have an extra subpixel added to each basic RGB pixel, and these screens therefore have four subpixels per pixel. So, Samsung is free to produce screens with extra green subpixels and market them as having extra green subpixels, so long as it provides a true and correct pixel count, with at least one red subpixel, one green subpixel, and one blue subpixel per pixel.

58.     However, Samsung does not group subpixels this way. Even though its Products have enough red and blue subpixels to constitute half of the advertised number of true pixels, the Products use no true pixels. Instead, they only use false pixels, producing an inferior image quality.

59.     Samsung is also free to produce Pentile screens, even though the screens would not have true pixels, and market the screens without listing a pixel count. Samsung could price and advertise such screens as being far cheaper than higher-quality conventional RGB screens with the same number of green subpixels. But Samsung's promise of a certain resolution is reasonably understood by ordinary consumers to mean that the screens have at least one red subpixel, one green subpixel, and one blue subpixel per pixel. Samsung fails to deliver on this promise. Samsung's Pentile screens are all falsely advertised, and Samsung's advertisements mislead reasonable consumers.

**Defendants' Pixel Count Claims Are False and Misleading**

60.    Throughout its advertising of Pentile Products, including online product descriptions, promotional material, and Product packaging and labels, Defendants have consistently conveyed the very specific message to consumers that the Products have high resolutions, with the advertised number of pixels and subpixels. The implication is clear: the Products and other similar Phones with Pentile Matrix Screens possess a pixel count calculated just as competitors' pixels are calculated, with each pixel being a true pixel capable of producing every color. This means that Defendants effectively claim that the Products possess a higher pixel count than they really do. Defendants claim that the Products have a higher screen quality than they really have, with about 33% more subpixels than they really have. The whole concept of the advertised claims is hinged upon this deception.

61.    The Products' advertising and packaging advertises a pixel resolution of a particular width times a particular height, implying that the pixel count will be the product of those numbers, and so accordingly the subpixel count will be about three times the number of pixels, with three subpixels per pixel. For example, KUN SOO KIM's Note 4 is advertised as having a 1440 x 2560 screen, which should be 1,440 pixels wide and 2,560 pixels tall, with 3,686,400 total pixels and 11,059,200 total subpixels (3,686,400 red subpixels, 3,686,400 green subpixels, and 3,686,400 blue subpixels). In reality, the Pentile screen has only about 1,843,200 red subpixels, 3,686,400 green subpixels, and 1,843,200 blue subpixels, for a total of about 7,372,800 subpixels.

62.    Due to the usage of Pentile screens on the Products, the Products only have half the advertised red and blue subpixels, and such screens could only form half of the advertised number of true pixels. The subpixel count in the Products is about 33% lower than what the reasonable consumer expects, causing degraded screen quality. This means that the reasonable

consumer is being misled into purchasing a product with a lower pixel and subpixel count than expected.

63.    This method of advertising is deceptive and misleading to the reasonable consumer.

64.    In addition to the Product packaging, labeling, and specification sheets, which consumers who purchased the Product in a physical store cannot miss, Defendant made and repeated their false inflated pixel count across a variety of media. This includes the product pages of large online stores such as www.amazon.com and www.bestbuy.com where the Products can be directly ordered, all specifically designed to reinforce the same false and misleading claims. For example, KUN SOO KIM's Note 4 is advertised on amazon.com to have 2560 x 1440 resolution (i.e. 3,686,400 total pixels). It does not. See partial screenshot below (emphasis added):[8]

| Memory | Internal memory - 3GB RAM; 32GB ROM | SDHC/SHD SD Card microSD (up to 128GB) | |
|---|---|---|---|
| CPU | 2.7 GHz Quad-Core Processor | | |
| Audio | Ultra High Quality Audio (~192KHz, 24 bit) support | Audio Playing Format - MP3, AAC/AAC+ /eAAC+ , WMA, AMR-NB/WB, Vorbis, FLAC | |
| Video | Recording & Playback: up to UHD | Video Playing Format - H.264, MPEG-4, H.263, VC-1, WMV7, WMV8, Sorenson Spark, MP43, VP8 | |
| Sensor Type | Gesture, Accelerometer, Geo-magnetic, Gyroscope, RGB,IR-LED Proximity, Barometer, Hall Sensor, Finger Scanner, UV, Heart Rate Monitoring, SpO2 | | |
| Display | S Pen Support Air Command (Action Memo, Smart Select, Image Clip, Screen Write) S Note, Snap Note, Direct Pen Input | Main Display Resolution- 2560 x 1440 | Main Display Size - 5.7 inch Quad HD Super AMOLED |

---

[8] https://www.amazon.com/gp/product/B00WZZ5KLW?ie=UTF8&ref_=olp_product_details (last accessed Mar. 2, 2018).

**The Impact of Defendants' Misleading and Deceptive Advertising**

65.    Samsung has succeeded in its deceit and has reaped monetary benefits from its

deceptive campaigns advertising the Products. Such profit would not have occurred without

Samsung's deceptive and misleading marketing and advertising campaign because consumers

would have purchased similar products from competitors that were truthfully advertised with the

accurate number of pixels and subpixels.

66.    Samsung charges a price of up to about $950 for the Products, despite the false pixel

count implied through its advertising. Plaintiff and the other members of the Class paid the price

for the Product because they didn't know that the Product claims were wrong.

67.    Plaintiff and the other members of the Class each believed they were purchasing a

Product that would provide the implied pixel resolution as detailed herein. In reality, Plaintiffs

and the other members of the Class paid to receive the 50% missing pixels and 33% missing

subpixels, but they did not get what they bargained for.

68.    As a result of Samsung's deceptive marketing and lack of proper labels, Plaintiffs and

the Class members have been harmed in their purchases of the Phones with Pentile Matrix

Screens.

69.    As the manufacturers, sellers, and/or distributors of the Product, Defendants possess

specialized knowledge regarding the make-up and screen quality of the Product.

70.    Defendants knew or should have known, but failed to disclose, that the Product does

not provide the pixel or subpixel count promised through advertisements.

71.    As a result of Defendants' deceptive pixel claim, Plaintiffs and other members of the

proposed Class have purchased the Products, which do not perform as advertised. Defendants

have reaped enormous profits from their false, misleading and deceptive marketing and sale of

the Product. Plaintiffs and members of the proposed Class have been deceived and misled by Defendants' deceptive pixel resolution claim.

## CLASS ACTION ALLEGATIONS

72.    Plaintiff seek relief in their individual capacities and as representatives of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of the following classes:

**The Nationwide Class**

73.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Nationwide Class"):

> All retail consumers who purchased or financed the Products in the United States, including all 50 states and the District of Columbia, during the applicable statute of limitations period and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

74.    New York law applies to the claims of all U.S. purchasers. In the alternative, if the Court finds that New York law does not apply to all members of the Nationwide Class, Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Nationwide Class and State Subclasses. Each State Subclass consists of:

> All retail consumers who purchased or financed the Products in that state within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

**The New York Class**

75.    In the alternative, should a Nationwide Class under New York law not be certified, Plaintiff KUN SOO KIM seeks to represent the following Class or Subclass (the "New York Class"):

> All New York retail consumers who purchased or financed the Product within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

**The California Class**

76.     In the alternative, should a Nationwide Class under New York law not be certified,

Plaintiff DONNY VALLEJO seeks to represent the following Class or Subclass (the "California

Class"):

> All California retail consumers who purchased or financed the Product within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

**The New Jersey Class**

77.     In the alternative, should a Nationwide Class under New York law not be certified,

Plaintiff MANUEL TRINIDAD seeks to represent the following Class or Subclass (the "New

Jersey Class"):

> All New Jersey retail consumers who purchased or financed the Product within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

**The Pennsylvania Class**

78.     In the alternative, should a Nationwide Class under New York law not be certified,

Plaintiff RICHARD LEE seeks to represent the following Class or Subclass (the "Pennsylvania

Class"):

> All Pennsylvania consumers who purchased or financed the Product within the applicable statute of limitations period, and/or such subclasses as the Court may deem appropriate, until the date of notice is disseminated.

79.     Excluded from the Classes (Collectively the Nationwide Class and the state Classes

comprise the "Classes") are Defendants' current and former officers, directors, and employees,

and those who purchased the Product for the purpose of resale. Also excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

80.     Plaintiffs reserve the right to revise the Class definitions based on facts learned in the course of litigating this matter.

81.     ***Numerosity***. While the exact number and identities of purchasers of the Product are unknown to Plaintiff at this time, Plaintiff is informed and believes that the Nationwide Class and New York Class contain thousands of purchasers ("Class Members") and are so numerous that individual joinder of all Class members is impracticable.

82.     In the alternative, if the Court finds that New York law does not apply to all members of the Nationwide Class, Plaintiffs are informed and believe each State Subclass contains thousands of purchasers ("Class Members") and are so numerous that individual joinder of all Class Members is impracticable.

83.     ***Existence and Predominance of Common Questions of Law and Fact***. Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

  a.  Whether the claims discussed above are true, or are misleading, or objectively likely to deceive;

  b.  Whether Defendants' marketing and advertising of the Product is false, fraudulent, deceptive, unlawful, or misleading;

  c.  Whether Defendants has breached warranties made to the consuming public about their Product;

d.   Whether Defendants' marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to consumer law violations in all other jurisdictions;

e.   Whether Plaintiff and members of the Classes sustained monetary loss and the proper measure of loss;

f.   Whether Defendants' conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Classes;

g.   Whether Plaintiff and other members of the Classes are entitled to other appropriate remedies, including equitable relief; and

h.   Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Classes.

84.   In the alternative, if the Court finds that New York law does not apply to all members of the Nationwide Class, consumer fraud laws among the 50 states and the District of Columbia are substantially uniform in their treatment of Defendants' deceptive practices such that a realistic plan exists for adjudicating the claims of the Nationwide Class under each state's laws.

85.   ***Typicality***. Plaintiff's claims are typical of those of the Class members because, *inter alia*, Plaintiff and the other Class members were all injured by same uniform conduct, as detailed herein, and were subject to Defendants' pixel claims that accompanied each and every Pentile Matrix Phone product. In addition, nowhere did product warn consumers about the Product's

subpixel counts. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes.

86. ***Adequacy of Representation***. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiff nor Plaintiff's counsel has any interests that conflict with or are antagonistic to the interests of the Classes.

87. ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by any individual Class member is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. Thus, it would not be economically feasible for an individual class member to prosecute a separate action on an individual basis, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

88. The prerequisites to maintaining a class action for equitable relief pursuant to Rule 23(b)(2) are also met, as Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

89. In the alternative, if the Court finds that New York law does not apply to all members of the Nationwide Class, a Nationwide Class applying the laws of individual states is superior to

other methods of resolving this controversy. Individual states' consumer fraud law has little substantive variation as applied to this case. To the extent that state laws vary, "relatively minor variations . . . may be handled at trial 'by grouping similar state laws together and applying them as a unit.'" *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 315 (3d Cir. 1998)).

90.     Plaintiff seeks preliminary and permanent equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

91.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE NEW YORK DECEPTIVE ACTS AND PRACTICES ACT
## (N.Y. Gen. Bus. Law § 349, *et seq.*)

*(Brought Individually and on behalf of the Nationwide Class under New York Law; Alternatively, brought Individually and on behalf of the State Classes under New York Law; Alternatively, brought Individually and on behalf of the New York Class.)*

92.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

93.     Plaintiffs bring this claim individually and on behalf of the Nationwide Class for an injunction and damages for Defendants' violations of New York's Deceptive Acts and Practices Law, Gen. Bus. Law ("NY GBL § 349").

94.     Alternatively, KUN SOO KIM brings this claim individually and on behalf of the New York Class for an injunction and damages for Defendants' violations of NY GBL § 349.

95.     Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

96.     The practices of Defendants described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

      a.   Defendants engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff KUN SOO KIM and the Class about facts that could not reasonably be known by them;

      b.   Defendants failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

      c.   Defendants caused Plaintiff KUN SOO KIM and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through their conduct;

      d.   Defendants failed to reveal material facts to Plaintiff KUN SOO KIM and the Class with the intent that Plaintiff KUN SOO KIM and the Class members rely upon the omission;

      e.   Defendants made material representations and statements of fact to Plaintiff KUN SOO KIM and the Class that resulted in Plaintiff KUN SOO KIM and the Class

        reasonably believing the represented or suggested state of affairs to be other than

        what they actually were;

f.    Defendants intended that Plaintiff KUN SOO KIM and the members of the Class

        rely on their misrepresentations and omissions, so that Plaintiff KUN SOO KIM

        and Class members would purchase the Product; and

g.   Defendants knowingly and falsely represented and advertised that the Product had

        an inflated pixel resolution.

97.    Under all of the circumstances, Defendants' conduct in employing these unfair and

deceptive trade practices were malicious, willful, wanton and outrageous such as to shock the

conscience of the community and warrant the imposition of punitive damages.

98.    Defendants' actions impact the public interest because Plaintiff KUN SOO KIM and

members of the Class were injured in exactly the same way as thousands of others purchasing the

Product as a result of and pursuant to Defendants' generalized course of deception.

99.    By committing the acts alleged in this Complaint, Defendants have extracted a high

price from Plaintiff KUN SOO KIM and the Class by inducing an erroneous belief that the

Product has a higher quality screen than it really does, with more pixels and subpixels than it

really has. This is a deceptive business practice that violates NY GBL § 349.

100.   Defendants' pixel claims misled Plaintiff KUN SOO KIM and are likely in the future

to mislead reasonable consumers. Specifically, as a result of Defendants' false advertising,

Plaintiff KUN SOO KIM and other Class members suffered monetary losses associated with the

purchase of Phones utilizing Pentile Matrix, because the purchased Products possessed inferior

screens with a much lower pixel and subpixel count than was advertised. The Products were

consequently worth far less than what Plaintiff KUN SOO KIM and Class Members had bargained for.

101.    The foregoing deceptive acts, omissions and practices were directed at consumers.

102.    The foregoing deceptive acts, omissions and practices set forth in connection with Defendants' violations of NY GBL § 349 proximately caused Plaintiff KUN SOO KIM and other members of the Class to suffer actual damages in the form of, inter alia, monies spent to purchase the Product, and are entitled to recover such damages, injunctive relief, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II.

## VIOLATIONS OF THE NEW YORK FALSE ADVERTISING LAW
## (N.Y. Gen. Bus. Law § 350, *et seq.*)

*(Brought Individually and on behalf of the Nationwide Class under New York Law;*
*Alternatively, brought Individually and on behalf of the State Classes under New York Law;*
*Alternatively, brought Individually and on behalf of the New York Class.)*

103.    Plaintiffs reallege and incorporate herein by reference all allegations contained above as if fully set forth herein and further allege as follows:

104.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class for violations of New York's False Advertising Law, Gen. Bus. Law ("NY GBL § 350").

105.    Alternatively, KUN SOO KIM brings this claim individually and on behalf of the New York Class for violations of NY GBL § 350.

106.    NY GBL § 350 provides that false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

107.    NY GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

108.    Any person who has been injured by reason of any violation of the NY GBL may bring an action in his own name to enjoin unlawful act or practice, an action to recover his actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

109.    As fully alleged above, by advertising, marketing, distributing, labeling and selling mislabeled Products utilizing the Pentile Matrix Screen to Plaintiff KUN SOO KIM and other members of the Class, Defendants engaged in, and continue to engage in, false advertising.

110.    Defendants engaged in false advertising by advertising, marketing, distributing and selling the Phones with Pentile Matrix Screens as possessing a high pixel count, when Defendants knew that the Product was missing 33% of the subpixels advertised.

111.    Defendants' conduct was directed at consumers.

112.    Justifiable reliance is not required for a § 350 claim. See Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012).

113.    Plaintiff KUN SOO KIM and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the members of the Class will be irreparably harmed unless Defendants are enjoined from falsely advertising its phones with inflated pixel counts as described herein.

114.    Plaintiff KUN SOO KIM and other members of the Class suffered a loss as a result of Defendants' false advertising. Specifically, as a result of Defendants' false advertising, Plaintiff KUN SOO KIM and other Class members suffered monetary losses associated with the purchase or lease of the Product because the Product was less valuable than advertised.

115.    In this regard, Defendants have violated, and continues to violate, NY GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendants' violation of NY GBL § 350 above, Plaintiff KUN SOO KIM and other members of the Class have suffered damages in an amount to be determined at trial.

## COUNT III.

## VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,
## (Cal. Civ. Code § 1750, *et seq.*)

*(Brought Individually and on behalf of the California Subclass of the Nationwide Class; Alternatively, brought Individually and on behalf of the California Class.)*

116.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

117.    Plaintiff DONNY VALLEJO brings this claim individually and on behalf of the California Class for Defendants' violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, including section 1761(d).

118.    Plaintiffs and Class members are consumers who purchased or leased the Products for personal, family or household purposes. Plaintiffs and Class members are "consumers" as that term is defined by the CLRA. Cal. Civ. Code § 1761(d). Plaintiffs and Class members are not sophisticated experts with independent knowledge of either a) optical engineering, or b) corporate branding, labeling and packaging practices.

119.    Products that Plaintiffs and other members of the Classes purchased from Defendants were "goods" within the meaning of the CLRA. Cal. Civ. Code § 1761(a).

120.    Defendants' actions, representations, and conduct have violated and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

121.    Defendants violated federal and California law because the Products are falsely advertised and because they are intentionally packaged to mislead consumers and prevent the consumer from being able to determine that they are falsely advertised.

122.    California's Consumers Legal Remedies Act prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Cal. Civ. Code § 1770(a)(5). By engaging in the conduct set forth herein, Defendants violated and continue to violate section 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendants misrepresent that the Products have quantities of pixels and subpixels which they do not have.

123.    The CLRA further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). By engaging in the conduct set forth herein, Defendants violated and continue to violate section 1770(a)(9), because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that they advertise goods with the intent not to sell the goods as advertised. Defendants instead sell cell phones with worse screens than advertised.

124.    Plaintiffs and Class members acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

125.    Plaintiff DONNY VALLEJO and members of the Classes suffered injuries caused by Defendants because (a) they would not have purchased the Products on the same terms absent Defendants' illegal and misleading conduct as set forth herein; (b) they paid a price premium for the Products due to Defendants' misrepresentations and deceptive packaging; and (c) the Products did not have the qualities as promised.

126.    On or about March 2, 2018, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code section 1782(a). Plaintiffs sent to Defendants, on behalf of themselves and the proposed Nationwide Class and California Class, a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiffs' letter is attached hereto as **Exhibit A**.

127.    Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT IV.

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, (California Business & Professions Code § 17200, *et seq.*)

*(Brought Individually and on behalf of the California Subclass of the Nationwide Class; Alternatively, brought Individually and on behalf of the California Class.)*

128.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

129.     Plaintiff DONNY VALLEJO brings this claim individually and on behalf of the California Class for Defendants' violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

130.     The UCL provides, in pertinent part: "[U]nfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.

131.     Defendants violated federal and California law because the Products are falsely advertised and because they are intentionally packaged to mislead consumers and prevent the consumer from being able to determine that they are falsely advertised.

132.     Defendants' business practices, described herein, violated the "unlawful" prong of the UCL by violating the CLRA, and other applicable law as described herein.

133.     Defendants' business practices, described herein, violated the "unfair" prong of the UCL in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' advertising is of no benefit to consumers, and their false assertions and omissions concerning the screen quality and pixel and subpixel count of the Products offends public policy.

134.     Defendants violated the "fraudulent" prong of the UCL by misleading Plaintiffs and members of the Classes to believe that the Products contained more pixels and subpixels than they actually do—i.e. that they have higher-quality screens than they actually have—and that such packaging and labeling practices were lawful, true and not intended to deceive or mislead the consumers.

135.    Plaintiffs and members of the Classes are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiffs and members of the Classes acted reasonably when they purchased the Products based on their belief that Defendants' representations were true and lawful.

136.    Plaintiffs and members of the Classes lost money or property as a result of Defendants' UCL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to Defendants' misrepresentations; and (c) the Products did not have the qualities as promised.

## COUNT V.

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW, (California Business & Professions Code § 17500, *et seq.*)

*(Brought Individually and on behalf of the California Subclass of the Nationwide Class; Alternatively, brought Individually and on behalf of the California Class.)*

137.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

138.    Plaintiff DONNY VALLEJO brings this claim individually and on behalf of the California Class for Defendants' violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

139.    By enacting the FAL, the State of California has made it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or

which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500.

140.    Defendants engaged in a scheme of offering misbranded Products for sale to Plaintiff and members of the Classes by way of packaging the Products with inferior screens containing less than the advertised number of pixels and subpixels. Such practice misrepresented the content, screen quality, and pixel and subpixel quantity of the misbranded Products. Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in the FAL, in that the product packaging was intended as inducements to purchase Defendants' Products. *See* Cal. Bus. & Prof. Code § 17500, *et seq.* Defendants knew that these statements were unauthorized, inaccurate, and misleading.

141.    Defendants violated federal and California law because the Products are falsely advertised and because they are intentionally packaged to mislead consumers and prevent the consumer from being able to determine that they are falsely advertised.

142.    Defendants violated the FAL by misleading Plaintiffs and the members of the Classes to believe that the Product packaging's pixel and subpixel constituted true representations about the Products as described herein.

143.    Defendants knew or should have known, through the exercise of reasonable care, that the Products were and continue to be misbranded, and that their representations about the screen quality and pixel and subpixel count in the Products were untrue and misleading.

144.    Plaintiffs and the members of the Classes lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased the Products on the same terms absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations; (b) they paid a price premium for the Products due to

Defendants' misrepresentations; and (c) the Products did not have the characteristics, benefits, or qualities as promised.

## COUNT VI.

## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. § 56:8-1, *et seq.*)

*(Brought Individually and on behalf of the New Jersey Subclass of the Nationwide Class;*
*Alternatively, brought Individually and on behalf of the New Jersey Class.)*

145.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

146.    Plaintiff MANUEL TRINIDAD brings this claim individually and on behalf of the New Jersey Class for Defendants' violations New Jersey's Consumer Fraud Act, N.J. Stat. § 56:8-1, *et seq.* (the "NJCFA").

147.    Defendants' business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under the NJCFA. Defendants made their false, deceptive, and misleading statements and omissions directed at consumers and with the intent that consumers rely upon such statements.

148.    Plaintiffs and Class members are consumers who purchased or leased the Products for personal, family or household purposes.

149.    Defendants' numerous false statements in various media regarding the Products' screens were and are "advertisements" under the NJCFA: "The term 'advertisement' shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation." N.J. Stat. § 56:8-1(a). Each knowing misrepresentation or omission of material fact is a separate violation of the NJCFA.

150.    The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . ." N.J. Stat. § 56:8 2. Defendants violate the NJCFA by misrepresenting the quality of the Product screens and the quantity of those screens' pixels and subpixels. Defendants' entire advertising and marketing effort is designed to mislead reasonable consumers such as MANUEL TRINIDAD into purchasing or leasing the Products at inflated prices. If not for Defendants' false advertisements, consumers would not have paid as much for the Products or they would not have purchased or leased them at all.

151.    The NJCFA also prohibits "[t]he advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised." N.J. Stat. § 56:8 2.2. Defendants never manufactured or intended to sell phones with the screen quality, pixel count, or subpixel count advertised. Instead, Defendants falsely advertised the Products without intent to sell phones of the represented quality, violating section 56:8 2.2 of the NJCFA.

152.    Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices were malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

153.    Defendants' actions impact the public interest because Plaintiff MANUEL TRINIDAD and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendants' generalized course of deception.

154.    By committing the acts alleged in this Complaint, Defendants have extracted a high price from Plaintiff MANUEL TRINIDAD and the Class by inducing an erroneous belief that the Product has a higher quality screen than it really does, with more pixels and subpixels than it really has. This is a deceptive business practice that violates NY GBL § 349.

155.    Defendants' pixel claims misled Plaintiff MANUEL TRINIDAD, and those claims are likely in the future to mislead reasonable consumers. Specifically, as a result of Defendants' false advertising, Plaintiff MANUEL TRINIDAD and other Class members suffered monetary losses associated with the purchase of Phones utilizing Pentile Matrix, because the purchased Products possessed inferior screens with a much lower pixel and subpixel count than was advertised. The Products were consequently worth far less than what Plaintiff MANUEL TRINIDAD and Class Members had bargained for. If not for Defendants' false advertisements, consumers would not have paid as much for the Products or they would not have purchased or leased them at all.

156.    Consumers in New Jersey have been, and will continue to be, injured in their business and property by Defendants' unfair and deceptive practices. In accordance with sections 56:8-2.11, 8-2.12, and 8-19 of the NJCFA, Plaintiffs and are entitled to recover actual damages, treble damages, punitive damages, injunctive relief, equitable and declaratory relief, other appropriate damages, and attorneys' fees and costs.

## COUNT VII.

## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 Penn. Stat. Ann.§ 201-1, *et seq.*)

*(Brought Individually and on behalf of the Pennsylvania Subclass of the Nationwide Class; Alternatively, brought Individually and on behalf of the Pennsylvania Class.)*

157.    Plaintiff RICHARD LEE realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

158.    Plaintiff RICHARD LEE brings this claim individually and on behalf of the other members of the New York Class for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann.§ 201-1, *et seq.* (the "UTPCPL").

159.    Plaintiffs and Class members are consumers who purchased or leased the Products for personal, family or household purposes.

160.    The UTPCPL prohibits "'Unfair methods of competition' and 'unfair or deceptive acts or practices.'" 73 Penn. Stat. Ann.§ 201-2. Specifically, the UTPCPL prohibits: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have," 73 Penn. Stat. Ann.§ 201-2(v), "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," and 73 Penn. Stat. Ann.§ 201-2(viii) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," 73 Penn. Stat. Ann.§ 201-2(xxi).

161.    Defendants violate the UTPCPL by misrepresenting the quality of the Product screens and the quantity of those screens' pixels and subpixels. Defendants' entire advertising and marketing effort is designed to mislead reasonable consumers such as RICHARD LEE into purchasing or leasing the Products at inflated prices. If not for Defendants' false advertisements,

consumers would not have paid as much for the Products or they would not have purchased or leased them at all.

162.    Consumers in Pennsylvania have been, and will continue to be, injured in their business and property by Defendants' unfair and deceptive practices. In accordance with 73 Penn. Stat. Ann.§ 201-9.2, Plaintiffs and are entitled to recover actual damages, treble damages, punitive damages, injunctive relief, equitable and declaratory relief, other appropriate damages, and attorneys' fees and costs.

# COUNT VIII.

## UNJUST ENRICHMENT

*(Brought Individually and on Behalf of the Classes and/or Subclasses Under the Substantially Similar Unjust Enrichment Law of the 50 States and the District of Colombia)*

163.    Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

164.    By purchasing the Products, Plaintiffs and members of the Classes conferred benefits on Defendants in the form of the purchase prices of the Products.

165.    Defendants had knowledge of these benefits, and Defendants actively induced these benefits by means of their fraudulent and misleading representations and omissions.

166.    Defendants' acceptance and retention of these benefits is inequitable and unjust because the benefits were obtained through fraudulent conduct.

167.    Equity cannot in good conscience permit Defendants to be economically enriched for such fraudulent conduct at Plaintiffs' and Class members' expense.

168.    Plaintiffs and Class members therefore restitution and/or disgorgement of Defendants' economic enrichment that they fraudulently obtained at Plaintiffs' and Class members' expense.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, seek judgment against Defendants, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Awarding restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to Plaintiff and the proposed Class members;

d.  Awarding declaratory relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

e.  Statutory pre-judgment and post-judgment interest on any amounts;

f.  Awarding attorneys' fees and costs; and

g.  Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of

themselves and the Class, demand a trial by jury on all questions of fact raised by the Complaint.

Dated this 14th day of December 2018.

       Respectfully submitted,

       **LEE LITIGATION GROUP, PLLC**

    By: */s/ C.K. Lee*

       C.K. Lee (CL 4086)
       Anne Seelig (AS 3976)
       30 East 39th Street, Second Floor
       New York, NY 10016
       Tel.: 212-465-1180
       Fax: 212-465-1181

       *Attorneys for Plaintiff and the Class*