USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WAI KUEN CHU, DONNY VALLEJO, and
RICHARD LEE, *on behalf of themselves and all others similarly situated*,

                                          Plaintiffs,

-against-

SAMSUNG ELECTRONICS AMERICA, INC.,
and SAMSUNG ELECTRONICS CO., LTD,

                                          Defendants.
-----------------------------------------------------------------X

1:18-cv-11742-GHW

MEMORANDUM OPIUNION
AND ORDER

GREGORY H. WOODS, United States District Judge:

After Wai Kuen Chu, Donny Vallejo, and Richard Lee (together, "Plaintiffs") bought or leased Samsung smartphones, they allegedly discovered that their phone screens had a lower quality resolution than promised. Plaintiffs sued Samsung Electronics America, Inc. and Samsung Electronics Co, Ltd. (collectively "Samsung" and "Defendants") on behalf of a putative class, alleging violations of various state consumer protection laws and asserting common law fraud. For the most part, Defendants' motion asks the Court to engage in fact-intensive inquiries inappropriate on a motion to dismiss. For this reason, and for those that follow, the Court grants in part and denies in part Samsung's motion to dismiss.

## I. BACKGROUND

The facts are drawn from Plaintiffs' First Amended Complaint and are presumed true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. "Genuine" Pixels

Smartphone and tablet screens use pixels to display content. *See* First Amended Class

Action Complaint ("FAC"), Dkt. No. 36, ¶ 45. Every pixel on a screen contains three colored subpixels—usually a red, a green, and a blue. *See* FAC ¶ 46. When combined, these subpixels work together to permit a pixel to display a full range of color, brightness, and shading, regardless of what the pixel's neighboring pixel does. *See* FAC ¶ 45. For example, a red and green subpixel can combine so its parent pixel displays yellow, green and blue subpixels combine to emit cyan, and red and blue combine to make magenta. *See* FAC ¶ 46. The more pixels present in a display, the higher the display resolution, and the better quality images the display will produce. *See* FAC ¶ 46.

A device's screen resolution is described as the number of pixels on the display. The iPhone 8 Plus, for example, is advertised as having a 1920 x 1080 resolution—the number of pixels spanning the height and width of the device. *See* FAC ¶ 10. Such a display contains 2,073,300 pixels (1920 x 1080), and 6,220,800 subpixels (2,073,300 pixels x 3 subpixels).

**B. "False" Pixels**

Some of Samsung's devices have genuine pixels. *See* FAC ¶ 75-77. Other devices, however, have pixels that combine subpixels differently. These devices—those with what Samsung calls its "Pentile" screens and listed in a chart in the first paragraph of its complaint—feature pixels without their own dedicated subpixels. *See* FAC ¶¶ 51-55. Instead, Pentile screen pixels share fractions of their neighboring pixels' subpixels. On a "Rectangular Pentile" screen, a pixel has its own dedicated green subpixel, but shares half of its red subpixel with the pixel on its left, and half of its blue subpixel with the pixel to its right. *See* FAC ¶¶ 51, 54. This means that the Pentile pixels cannot operate independently and cannot display a full range of color—every pixel's emission depends on what color its neighboring pixel is emitting. *See* FAC ¶ 55.

For example, consider an image that requires that a blue pixel appear next to a red pixel. To turn a pixel red, that pixel's red subpixels must be turned on and its blue subpixels must be turned off. *See* FAC ¶ 55. But to make a pixel emit blue, the blue subpixel will need to be turned on, and

the red subpixel, off.  *See* FAC ¶ 55.  Because the neighboring pixels will share either a red subpixel or a blue subpixel, it is impossible for a Rectangular Pentile screen to properly display a red pixel next to a blue pixel—the image will appear blurry.  *See* FAC ¶ 55.

Samsung's Pentile screens are therefore advertised as having more genuine pixels than they really do.  The Galaxy A9, for example, is advertised as having 1080 x 2220 pixels.  *See* FAC ¶ 10.  But because those pixels are false pixels, with just two subpixels per pixel, its screen contains only 4,795,200 subpixels.  *See* FAC ¶ 10.  Plaintiffs compare this with the iPhone 8 Plus which, as discussed above, contains 6,220,800 subpixels.  *See* FAC ¶ 10.

**C. Parties**

Between 2013 and 2018, Plaintiffs purchased various Samsung smartphones in three different states.  *See* FAC ¶¶ 23, 32, 40.  The named plaintiffs allege that they were induced to purchase certain Samsung smartphones based on misleading claims about the quality of the devices' screen resolution—claims that "figure[d] prominently in Defendants' marketing, both on its website and in retail outlets."  FAC ¶¶ 3, 21, 31-32, 40.

Wai Kuen Chu is a New York resident.  *See* FAC ¶ 22.  In February 2016, Chu purchased a Galaxy Note 5 at a Verizon store in New York City for $600.  *See* FAC ¶ 23.  He expected the phone to have a 1440 x 2560 resolution based on advertisements he'd seen online and in-store, but he asserts that it did not.  *See* FAC ¶¶ 1, 24.  Similarly, California resident Donny Vallejo purchased a Galaxy S6 at a Sprint store in the San Francisco area around November 2015.  FAC ¶ 32.  Vallejo claimed that he saw that the Samsung S6 would have a 1440 x 2560 resolution in Samsung's advertisements both online and in-store, but that it did not.  *See* FAC ¶¶ 1, 30-31.  And Richard Lee, a Pennsylvania resident, purchased a Galaxy Note 4 from a Best Buy in Reading, Pennsylvania on January 10, 2015.  *See* FAC ¶¶ 39-40.  Lee allegedly saw Samsung's claims that the Galaxy Note 4 would have a 1440 x 2560 resolution in advertisements online and in the Best Buy store where he

3

purchased his device.  *See* FAC ¶ 40.  But the phone did not, according to Lee.  *See* FAC ¶ 40.

Plaintiffs assert that they were injured because these phones "did not provide the advertised screen quality or resolution" and were "worth less" than their bargained-for price.  FAC ¶¶ 24-25, 33-34, 41-42.  And even though they would like to buy Samsung devices in future, they do not know which products will have false pixels, and may be misled into purchasing a product without genuine pixels.  *See* FAC ¶¶ 25, 34, 42.  They seek relief in their individual capacities, and as representatives of all other similarly situated individuals who purchased any other devices with lower-than-advertised screen resolutions as listed in the first paragraph of their complaint.  *See* FAC ¶¶ 1, 86.

In their complaint, Plaintiffs assert the following seven causes of action against Samsung:  (1) violations of New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law ("GBL") § 349; (2) violations of New York False Advertising Law, GBL § 350; (3) violations of California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (4) violations of California Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200 *et seq.*; (5) violations of California False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500 *et seq.*; (6) violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UPTCPL"), 73 Penn. Stat. Ann. §§ 201-1, *et seq.*; and (7) common law fraud.  FAC ¶¶ 105-155, 168-179.  Plaintiffs also assert various consumer protection claims under the laws of each of the 50 states and the District of Columbia on behalf of the proposed class.  *See* FAC ¶ 14.

## II.     LEGAL STANDARD

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it "must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  Courts follow a "two-pronged approach" in determining plausibility.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "First, although a court must accept as true all of the allegations contained

4

in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (brackets and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). This analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court may consider not only the "facts stated on the face of the complaint," but also "documents appended to the complaint or incorporated in the complaint by reference," as well as "matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted omitted).

### III. DISCUSSION

Samsung moves to dismiss Plaintiffs' claims for several reasons. First, Samsung alleges that Plaintiffs lack standing to bring claims for phone and tablet models that none of the named plaintiffs bought (the "non-purchased devices"), and that Plaintiffs lack standing to seek injunctive relief. Second, Samsung argues that Plaintiffs have failed to state claims under the New York, California, or Pennsylvania consumer protection statutes or for common law fraud. Third, Samsung asserts that Lee's UTPCPL's claims are barred by the economic loss doctrine. Finally, Samsung challenges the timeliness of Vallejo's CLRA, FAL, and common law fraud claims, Lee's common law fraud claim, and Chu's New York GBL claims. The Court addresses each in turn.

#### A. Standing

##### 1. Non-purchased Devices

Even though Plaintiffs purchased or leased only three of the thirty-two devices that they allege were fraudulently advertised as having genuine pixels, they have standing—subject to further

5

inquiry at the class certification stage—to bring claims for them all. A plaintiff in a putative class action has class standing if "he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal citations and quotations omitted). "[C]ourts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff *did* purchase." *Mosley v. Vitalize Labs, LLC*, Nos. 13 CV 2470 (RJD)(RLM), 14 CV 4474 (RJD)(RLM), 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 562–63 (S.D.N.Y. 2016). Accordingly, a court may deny motions to dismiss claims for non-purchased products if the "products purchased by plaintiffs were sufficiently similar" such that any specific concerns "regarding the differences can be addressed at the class certification stage." *Hart v. BHH, LLC*, No. 15-CV-4804, 2016 WL 2642228, at *3 (S.D.N.Y. May 5, 2016) (quoting *Jovel v. i-Health, Inc.*, No. 12-CV-5614 (JG), 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013)).

Plaintiffs satisfy both parts of the Circuit's test for class standing. Plaintiffs have personally "suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," because they assert that they paid a premium for Samsung's Pentile products. *NECA-IBEW*, 693 F.3d at 162. And "the nature and content of the specific misrepresentation alleged," is similar with respect to all thirty-two devices. *Id.* Even though some screens were larger than others, and were advertised as having more pixels overall, all of the devices, according to Plaintiffs, have false pixels. Whether differing screen sizes, for example, justifies excluding putative class members is a fact-

6

intensive question better-suited for resolution at the class-certification stage. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *12 (E.D.N.Y. Aug. 29, 2013).

   **2. Injunctive Relief**

Plaintiffs have also established standing to pursue injunctive relief. As with claims for damages, a plaintiff seeking an injunction "must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). "The Supreme Court has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (emphasis in original, alterations and internal quotation marks omitted).

"In establishing a certainly impending future injury, . . . the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003). Plaintiffs here have alleged that they intend to continue purchasing Samsung devices, but are concerned that they will be misled into purchasing another false pixel product, rather than one of Samsung's genuine pixel products. *See* FAC ¶¶ 25, 34, 42.

Defendants note that some district courts have drawn a broad corollary from *Nicosia*, deciding that plaintiffs in a false advertising case generally cannot demonstrate future injury because,

7

since a "plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, 'there is no danger that they will again be deceived by them.'" *Davis v. Hain Celestial Grp., Inc,* 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (quoting *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015).[1] Because Plaintiffs now know that Samsung's Pentile displays use false pixels, Defendants argue, there is no danger that Plaintiffs will again be injured by Samsung's advertisements.

But even under such a broad reading of *Nicosia*, Samsung's argument still fails. Samsung's assertion that Plaintiffs will not be injured in future is premised on a number of facts extrinsic to the complaint, such as the fact that all false pixel products are necessarily labeled as Pentile products. On a motion to dismiss, a court cannot consider those facts—instead, a court must accept as true all of the allegations contained in a complaint and draw all inferences in favor of the non-movant. *See Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985). And a proper inference

---

[1] These cases rely on a principle articulated by the Second Circuit in *Nicosia*, where the circuit held that a consumer lacked standing to seek injunctive relief when the retailer defendant had stopped selling the product on its website, and the plaintiff failed to alleged that he intended to use the retailer in the future to buy *any* products, let alone the specific product at issue. *Nicosia*, 834 F.3d at 239. But the Second Circuit has not directly addressed whether plaintiffs alleging claims of false or misleading advertising have standing to sue for injunctive relief where the advertising at issue is still ongoing. *See Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (citing cases). This Court has found only a nonprecedential summary order where the circuit determined that a plaintiff lacked standing because he claimed that he would never again purchase the defendant's product. *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018).

Like *Campbell*, this Court finds persuasive the Ninth Circuit's opinion in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 969–70 (9th Cir. 2018). There, the plaintiff alleged that the flushable wipes he had purchased were not actually "suitable for disposal in a household toilet," contrary to their labeling, but he "continue[d] to desire to purchase" truly flushable wipes, and "would purchase truly flushable wipes manufactured by [defendant] if it were possible to determine prior to purchase if the wipes were suitable to be flushed." 889 F.3d at 962. The Ninth Circuit held that those allegations were sufficient for a consumer to establish standing for injunctive relief because the consumer experienced an ongoing injury: the inability to rely on the defendant's advertising. *Id.* at 971–72. The court reasoned that:
> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969–70 (internal citations omitted).

this Court might draw from Plaintiffs' complaint is that in future, Samsung may produce a product with a new type of screen that also uses false pixels, and will not refer to it as a "Pentile" screen in its advertisements. If Plaintiffs purchased those devices, unable to discriminate between Samsung's true pixel products and false pixel products, they will be injured.

Because Plaintiffs have standing to pursue both damages and injunctive relief, the Court will now consider whether Plaintiffs have stated a claim.

B. **Sufficiency of the Allegations**

Plaintiffs have sufficiently pleaded their state consumer protection and common law fraud claims. Plaintiffs' claims under California's and Pennsylvania's consumer protection statutes and common law, as well as their claims under New York common law, are governed by Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (California law claims); *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)) (Pennsylvania law claims); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015) (New York common law fraud). The GBL claims need only satisfy Rule 8. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).[2]

---

[2] In *Pelman*, the Second Circuit held that claims under New York General Business Law §§ 349, 350 are not subject to the heightened pleading standards of Rule 9(b), because § 349 "extends well beyond common-law fraud" and "does not require proof of the same essential elements . . . as common-law fraud[.]". 396 F.3d at 511; *see also Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014). Since then, federal courts have questioned whether those claims ought to, instead, be governed by Rule 9(b). *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429 (S.D.N.Y. 2017), *modified on reconsid.*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). But a district court within the Second Circuit must follow Second Circuit precedent "unless and until that case is reconsidered by [the Second Circuit] sitting en banc (or its equivalent) or is rejected by a later Supreme Court decision." *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003). As neither of those intervening events has yet occurred, *Pelman*'s holding remains controlling, and "establish[es] a categorical rule that [§ 349] claims, regardless of whether they sound in fraud, or are premised on specific misrepresentations rather than an advertising scheme, are not subject to the heightened pleading requirement of Rule 9(b)." *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW), 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) (internal quotations omitted). Regardless, the Court finds that Chu's claims also satisfy Rule 9(b).

Under Rule 9(b) of the Federal Rules of Civil Procedure, allegations of fraud must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins.*, 783 F.3d at 402-03 (citation omitted). Some courts have described this as the "who, what, where, when, and why" of the claim. *See, e.g.*, *Jovel v. i-Health, Inc.*, No. 12-CV-5614 (JG), 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013).

### 1. Misrepresentation

New York, California, and Pennsylvania's consumer protection statutes and common law all require that plaintiffs could plausibly allege that a reasonable consumer would be misled. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (NY GBL); *Fin. Guar. Ins.*, 783 F.3d at 402 (New York common law fraud); *Maxwell v. Unilever U.S., Inc.*, No. 5:12-CV-01736-EJD, 2018 WL 1536761, at *5 (N.D. Cal. Mar. 29, 2018) (UCL, FAL, and CLRA); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638-SC, 2013 WL 2389687, at *3 (N.D. Cal. May 30, 2013) (California common law fraud); *La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 514–516 (S.D.N.Y. 2018), *aff'd*, 772 F. App'x 4 (2d Cir. 2019) (UPTCPL and Pennsylvania common law fraud).

First, Plaintiffs adequately pleaded a misrepresentation. *See Green v. Covidien LP*, No. 18 Civ. 2939 (PGG), 2019 WL 4142480, at *10 (S.D.N.Y. Aug. 30, 2019). Although Plaintiffs were unable to specify the exact advertisements that they saw, they noted the pixel claims that Samsung made in connection with every Pentile device at issue, and identified the approximate dates that Plaintiffs saw these claims echoed in advertisements online and in stores before they purchased (or leased) their cellphones. Chu saw those advertisements both online and in-store when he purchased his Galaxy Note 5 in February 2016 in New York, New York. FAC ¶ 23. Vallejo saw the advertisements online and in-store in late 2015 before leasing his Galaxy S6 in San Francisco, California in November 2015. FAC ¶ 31–32. And Lee saw the advertisements online and in-store in Reading,

10

Pennsylvania on January 10, 2019 when he purchased his Galaxy Note 4. FAC ¶ 40. Plaintiffs also explained how those advertisements misrepresented the quality of the screen resolution on Samsung's Pentile devices. Requiring that Plaintiffs locate a copy of the exact advertisements they saw to plead a misrepresentation with particularity would set the bar too high, even for claims governed by Rule 9(b).

Samsung argues that no reasonable consumer would find its advertisements misleading because (1) "Plaintiffs provide no basis to support that a 'reasonable consumer'" can distinguish true pixels from false pixels; and (2) Samsung markets the Pentile displays as "Super AMOLED" products, a label that typically "connotes a pentile pixel arrangement." Defs.' Mot. to Dismiss ("MTD"), Dkt. No. 46, at 9–10, 15–16 (internal quotations omitted). Samsung's first argument is inconsistent with the facts pleaded in the complaint, which the Court is required to accept as true. In their complaint, Plaintiffs assert that pictures displayed on a screen with false pixels will appear blurry if those pictures require, for example, the colors red and blue to appear next to one another. And Samsung's second assertion (1) requires that the Court look to facts extrinsic to the complaint, (2) assumes that these false pixel products will always be denoted "Super AMOLED" products in advertisements, and (3) assumes that consumers will be able to determine that these labels mean that the device uses false pixels. Such an argument is more properly raised after discovery—not on a motion to dismiss.

In sum, the Court cannot determine, as a matter of law, that no reasonable consumer would be misled by Samsung's advertisements.

### 2. Reliance

Plaintiffs have also sufficiently pleaded reliance. New York, California, and Pennsylvania common law, as well as the UPTCPL all require that plaintiffs plead either reasonable or justifiable reliance. S*ee Fin. Guar. Ins.*, 783 F.3d at 402 (fraud claims under New York common law must,

11

among other things, allege a materially misleading representation "upon which the plaintiff reasonably relied."); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 (9th Cir. 2001) (California common law requires "justifiable reliance"); *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir. 1991) (Pennsylvania common law fraud claims require "justifiable reliance"); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) (UTPCPL claim requires that a plaintiff prove the common law fraud element of justifiable reliance). Here, Plaintiffs asserted that they relied on Samsung's advertisements when they paid a premium for their Samsung smartphones—after all, Samsung marketed these devices as having a high resolution and excellent screen quality, well worth the extra expense. *See* FAC ¶¶ 3, 79.

Samsung argues that Plaintiffs' reliance was not justified, because when Plaintiffs saw the Samsung advertisements and purchased their phones, the Pentile technology was "the norm in the smartphone industry and had been publicized widely, in addition to being denoted via the 'Super AMOLED' label in any of the [advertisements] Plaintiffs might have viewed." MTD at 15. For this proposition, Samsung cites to *Daniel v. Mondelez International, Inc.*, where a plaintiff sued a candy manufacturer over its use of non-functional slack-fill in its candy packaging. 287 F. Supp. 3d 177, 199–200 (E.D.N.Y. 2018). The district court found that the plaintiff failed to establish justifiable reliance on any implied-misrepresentation in the packaging because the package provided clear, visible, and accurate information as to the net weight and amount of candy in the package. *Id.* at 199. A person of ordinary intelligence could have discovered the extent of slack-fill and the amount of candy by reading the labels and manipulating the package. *Id.* at 200.

Determining whether a display uses genuine pixels requires more investigation than skimming a label or shaking a package of candy. According to Plaintiffs, there is no indication on Samsung's devices that a product uses false pixels. And whether a person of ordinary intelligence could have learned the truth though "simple investigation" is a question of fact. "In general, the

12

reasonableness of a plaintiff's reliance is a nettlesome and fact-intensive question which we, like our Circuit's many district courts, will not lightly dispose of at the motion-to-dismiss stage." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 n.19 (2d Cir. 2015) (internal quotations and citation omitted); *see also City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) ("Except in the *rare* case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.") (quoting *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 609 (Cal. 1995)); *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 139 (3d Cir. 2005) ("We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury.").

The Court therefore cannot find, as a matter of law, that Plaintiffs' reliance was not reasonable.

### C. Economic Loss Rule

The economic loss rule does not bar Lee's UPTCPL's claim even though he alleges an injury only because he paid an inflated price for his device. MTD at 16. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract[.]" *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Although the Third Circuit determined in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), that the economic loss doctrine applies to statutory fraud claims, including the UTPCPL, that decision is not binding on a court within the Second Circuit. Since the Third Circuit's decision, Pennsylvania state courts have explicitly rejected its reasoning. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 411 (E.D. Pa. 2016) (collecting cases); *Rearick v. Elderton State Bank*, No. 1769 WDA 2014, 2015 WL 7301893, at *17 (Pa. Super. Ct. Nov. 19, 2015) ("The economic loss doctrine, as adopted by the Pennsylvania Supreme Court, provides that no cause of action exists for *negligence* that results solely in economic damages unaccompanied by physical injury or property

13

damage." (quoting *Knight v. Springfield Hyundai*, 81 A.3d 940, 951 (Pa. Super. Ct. 2013) (emphasis added)); *see also Dixon v. Nw. Mut.*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016).

Because the Court is persuaded by the later state court decisions rejecting *Werwinski*, this Court concludes that Lee's claim for fraudulent misrepresentation is not barred by UPTCPL.

### D. Statute of Limitations

Vallejo's CLRA, FAL, and common law fraud claims are untimely. So are Lee's common law fraud claims.[3] But Chu's GBL claims were brought within the three-year statute of limitations, and therefore survive Defendants' motion to dismiss.

"At the motion to dismiss stage, dismissal of a complaint on the grounds that the statute of limitations has expired is appropriate only if the complaint clearly shows the claim is out of time." *Levy v. BASF Metals Ltd.*, No. 1:15-cv-7317-GHW, 2017 WL 2533501, at *4 (S.D.N.Y. June 9, 2017) (quotation omitted), *aff'd*, 917 F.3d 106 (2d Cir. 2019).

California CLRA, FAL, and common law fraud claims are all governed by a three-year statute of limitations. *See* Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 338(a); Cal. Civ. Proc. Code § 338(d); *see also Plumlee v. Pfizer, Inc.*, No. 13-CV-00414-LHK, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014) (CLRA and FAL); *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *3 (N.D. Cal. June 4, 2018) (common law). Under California law, "'ordinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action,' which is the 'moment a claim accrues.'" *Goldemberg v. Johnson & Johnson Consumer Comp., Inc.*, 317 F.R.D. 374, 386 n.10 (S.D.N.Y. 2016) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875 (Cal. 2013)); *Plumlee*, 2014 WL 695024, at *7 ("The 'last element' accrual rule provides that absent any equitable

---

[3] Because Plaintiffs failed to respond to Samsung's assertions that Vallejo and Lee's claims were untimely, they have effectively conceded Defendants' arguments. *See, e.g.*, *Felske v. Hirschmann*, No. 10 CIV. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (citing cases). Still, the Court independently analyzed the viability of each claim under the applicable statute of limitations.

14

exception, a claim accrues upon the occurrence of the last element essential to the cause of action.") (internal quotations and citations omitted). For California CLRA, FAL, and common law fraud claims, the cause of action "accrues when a defendant misrepresents or omits material information regarding a product or service and a consumer makes a purchase as a result of such deceptive practices." *Plumlee*, 2014 WL 695024, at *7. Vallejo leased his device in November 2015, *see* FAC ¶ 32, but filed this action on December 14, 2018.[4]

Pennsylvania has a two-year statute of limitations for common law fraud claims. 42 Pa. Cons. Stat. Ann. § 5524(7). The statute begins to run "as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005).[5] Lee purchased his device in January 2015, FAC ¶ 40, but filed this lawsuit in December 2018—well outside of the two-year window.

Claims brought under sections 349 and 350 of New York's GBL are subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(2); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007). Under New York law, "a claimant's cause of action accrues upon injury by the deceptive act or practice, *i.e.*, 'when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.'" *Gristede's Foods*, 532 F. Supp. at 453 (E.D.N.Y. 2007) (quoting *Gaidon*, 96 N.Y.2d at 210). Chu was injured in February 2016—when, relying on Samsung's screen resolution claims, he purchased his device. FAC ¶ 23; *see Corsello v.*

---

[4] California's "delayed discovery rule" provides an exception, tolling the statute of limitations "until the plaintiff discovers, or has reason to discover, the cause of action." *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 883 (N.D. Cal. 2019) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005)); *see Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *7 (N.D. Cal. July 7, 2015) (stating that common law claims as well as claims brought under the UCL and CLRA are subject to the discovery rule); *Marshall v. PH Beauty Labs, Inc.*, No. CV 15-02101 DDP, 2015 WL 3407906, at *3 (C.D. Cal. May 27, 2015) (applying the discovery rule to a consumer fraud claim brought under the FAL). Because Plaintiffs have not invoked the discovery rule here, however, the Court need not analyze whether it applies to their claims.
[5] Similarly, Pennsylvania's discovery rule can toll the statute of limitations. *See In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 268 (E.D.N.Y. 2007). Again, the Court need not reach the question of whether this rule applies because Plaintiffs have not asserted that it does in opposing Defendants' motion to dismiss.

*Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).  Because he brought his GBL §§ 349–350 claims in December 2018, they are timely.

Because Vallejo's CLRA, FAL, and common law fraud claims, and Lee's common law fraud claim are barred by their applicable statutes of limitations, these claims do not survive Samsung's motion to dismiss.

### IV.     LEAVE TO AMEND

When a complaint is dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6), it is "the usual practice" to allow leave to replead.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).  Dismissal with prejudice is justified, however, if a plaintiff is "unable to allege any fact sufficient to support its claim."  *Cortec Indus.*, 949 F.2d at 48.

Vallejo and Lee could not allege any facts sufficient to revive their CLRA, FAL, and common law fraud claims because they are time barred by the applicable statute of limitations. Leave to amend those claims is, therefore, denied.

### V.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Defendants' motion to dismiss Vallejo's California CLRA, FAL, and common law fraud claims and Lee's Pennsylvania common law fraud claim is granted.  These claims are dismissed with prejudice because they are time-barred by the applicable statutes of limitations.

Defendants' motion to dismiss Chu's GBL and common law fraud claims, Vallejo's California UCL claim, and Lee's Pennsylvania UTPCPL claims is denied.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 40.

SO ORDERED.

Dated: March 23, 2020

_____
GREGORY H. WOODS
United States District Judge